O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIJAYAN STREEDHARAN, an individual, on behalf of himself and all other similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>STANLEY INDUSTRIAL & AUTOMOTIVE, LLC (doing business as "MAC TOOLS"), a Delaware corporation and DOES 1 through 100, inclusive,<br><br>                    Defendants. | Case No.:  5:22-cv-0322-MEMF (KSx)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, ALTERNATIVELY, TO COMPEL ARBITRATION [ECF NO. 14]** |

        Before the Court is Defendant Stanley Industrial & Automotive, LLC's Motion for Judgment on the Pleadings or, Alternatively, to Compel Arbitration. ECF No. 14. The Court held oral argument on this matter on August 18, 2022. For the reasons stated herein, the Court hereby DENIES the Motion for Judgment on the Pleadings or, Alternatively, to Compel Arbitration.

/ / /

/ / /

/ / /

/ / /

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## BACKGROUND

### I.   Factual Background[1]

Defendant Stanley Industrial & Automotive, LLC, is a Delaware limited liability company that does business as "Mac Tools" (hereinafter "Mac Tools"). Compl. ¶ 8. Mac Tools is a subsidiary of Stanley Black & Decker, Inc., a Connecticut Corporation which "is the number one worldwide company for tools and storage." *Id.* ¶ 10. Mac Tools "manufactures and distributes tools and related products like tool boxes [sic] and service equipment" and "sells Products to mechanics, technicians, and other service professionals as well as businesses providing these services." *Id.* ¶ 14. One of the ways Mac Tools distributes its products is through "Distributors" or "Franchisees." *Id.* ¶ 15. Distributors operate vehicles or "mobile stores" that display Mac Tools brands and marks. *Id.* Distributors "must purchase and operate a mobile vehicle [] stocked with Products within a Mac Tools-assigned geographic territory or route." *Id.* ¶ 3.

Plaintiff Vijayan Streedharan ("Streedharan") worked as Mac Tools Franchisee/Distributor[2] in California beginning in 2019.  *Id.* ¶ 7. Mac Tools exerts "vast control[] over" Distributors but "attempts to classify these workers as 'independent contractors.'" *Id.* ¶ 2. In doing so, "Mac Tools cheats these individuals out of protections provided by [] California law such as overtime pay and reimbursement of business expenses." *Id.* ¶ 3. Among other things, the mobile stores may only be used to operate the distributorship and "may not be altered without Mac Tools's express approval." *Id.* ¶ 15. Mac Tools controls the customer lists, reserves the right to set prices of products sold to Distributors and functionally sets the price of products to end-purchasers based on the company's online catalogues, flyers, and website. *Id.* ¶¶ 19, 20. Mac Tools requires that Distributors "personally work full-time to diligently promote, market, and increase the sale of Products as well as [the] Mac Tools's customer base." *Id.* ¶ 18. Distributors "pay for the right to work for Mac Tools" by

---

[1] Unless otherwise indicated, the following factual background is derived from the Complaint. ECF No. 1-1, ("Compl.").

[2] The Complaint uses the terms "Franchisee" and "Distributor" interchangeably.

1  providing non-refundable initial fees, annual fees, paying costs to attend mandatory out-of-state

2  training, and paying restock fees on returned merchandise. *Id.* ¶ 28.

3      Distributors sign contracts with Mac Tools that classify Distributors as independent contractors.

4  *Id.* ¶ 24. On June 28, 2018, Streedharan received a Franchise Disclosure Document ("FDD") from

5  Mac Tools that included a copy of the Mac Tools's Franchise Agreement, an addendum to the

6  Franchise Agreement, and an addendum to the FDD. ECF No. 21, Declaration of Vijayan

7  Streedharan ("Streedharan Decl.") ¶ 3; ECF No. 14-1, Declaration of Cory D. Catignani ("Catignani

8  Decl.), ¶ 5, Ex. 1. The addendum to the Franchise Agreement and the FDD and its addendum

9  included language that indicates that some of its provisions may be unenforceable under California

10  law. Streedharan Decl. ¶ 2. On August 21, 2018, Streedharan executed the Mac Tools Franchise

11  Agreement and an Addendum to Mac Tools Franchise Agreement for the State of California.

12  Streedharan Decl. ¶ 3; Catignani Decl., ¶ 5, Ex. 1. Streedharan also executed a Guaranty of Payment

13  and Performance of an Entity Mac Tools Franchisee. Streedharan Decl. ¶ 4.

14      Section 19.2 of the Franchise Agreement sets out a dispute resolution process.

16  **19.2 <u>Resolution of Disputes.</u>** Except with respect to the enforcement of the patties'
rights and remedies under (i) any promissory note executed by you in Mac Tools'
favor and/or under any security agreement between the parties, or (ii) any
promissory note executed by you in favor of a third party and/or under any security
agreement between you and a third party, either of which promissory note and/or
security agreement is assigned to Mac Tools by such third party, as to which the
procedures specified in this Section 19.2 shall not apply, the procedures specified
in this Section 19.2 are the only procedures for the resolution of any and all
controversies, disputes or claims of any nature whatsoever arising out of or related
to this Agreement or any other agreement between you and Mac Tools, including
the breach, termination or validity of any such agreement, or the relationship
between you and Mac Tools and/or the operation of the Mac Tools Business and
including any and all controversies, disputes or claims of any nature against Mac
Tools by anyone claiming through you. However, before or during the time that
you and Mac Tools follow these procedures, either you or Mac Tools can go to the
appropriate court to get a preliminary injunction or other preliminary judicial relief
if you or Mac Tools reasonably believes that such a step is necessary to avoid
irreparable damage or harm. Even if either you or Mac Tools takes such action, you
and Mac Tools will continue to participate in good faith in the procedures specified
in this Article 19. Notwithstanding anything in Section 19 to the contrary, without
obligation to pursue the negotiation, mediation or arbitration described herein, Mac
Tools shall at all times have the right to seek from an appropriate court replevin or
similar orders, as Mac Tools reasonably believes such order(s) are necessary.

3

ECF No. 14-2, pg. 32. Section 19.2 subsection (d) provides:

> **(d) <u>Arbitration</u>**. If the matter has not been resolved pursuant to mediation within 60 business days of the initiation of such procedure, or if either party will not participate in a mediation, the controversy shall be settled by arbitration by a sole arbitrator in accordance with the then-effective JAMS Comprehensive Arbitration Rules and Procedures. Any arbitrator shall be mutually elected by you and Mac Tools or, if you and Mac Tools cannot agree, by JAMS, The Resolution Experts in accordance with the then-effective JAMS Comprehensive Arbitration Rules and Procedures. The arbitrator is not empowered to and shall not, award punitive, exemplary, indirect, special consequential or incidental damages or any other damages in excess of actual direct damages or in excess of any limit on direct damages set forth in this Agreement, whichever is lower. Unless the parties agree otherwise in writing, the place of arbitration shall be at the JAMS Resolution Center in New York, New York. The arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16. Courts of the State of Ohio or the United States District Court for the Southern District of Ohio will have sole jurisdiction over enforcement of arbitration and/or enforcement of the Agreement. Judgment upon the award rendered by the arbitrator may be entered by any state or federal court in Ohio having jurisdiction thereof. If either party is required to compel arbitration, that party shall be reimbursed for the costs and expenses incurred in connection therewith.

ECF No. 14-2, pg. 33.

The Franchise Agreement and its addendum were presented to Streedharan on a "take-it-or-leave-it" basis with no opportunity to negotiate its terms. *Id.* ¶ 5.

## II.   <u>Procedural History</u>

On November 24, 2021, Streedharan filed a class action against Mac Tools in the Superior Court of California, County of San Bernardino, asserting seven causes of action: (1) failure to reimburse expenses; (2) unlawful deductions from wages; (3) failure to pay overtime; (4) failure to provide meal breaks; (5) failure to provide rest breaks; (6) failure to pay wages when due; and (7) unfair competition. *See generally* Compl. On February 21, 2022, Mac Tools filed a Notice of Removal, and this case was removed to federal court. ECF No. 1 ("Notice of Removal").  On February 28, 2022, Mac Tools filed an Answer to the Complaint. ECF No. 9.  On April 8, 2022, Mac Tools filed the instant Motion for Judgment on the Pleadings, or Alternatively, to Compel Arbitration. ECF No. 14 ("Motion" or "Mot."). Mac Tools seeks a full order granting judgment on the pleadings on the grounds that Streedharan was not its employee and therefore he lacks standing to bring employment-

4

1   related claims. Mot. at 2. Mac Tools also moves, in the alternative, to compel arbitration pursuant to

2   the arbitration provisions located in the Franchise Agreement ("Arbitration Agreement"). *Id.* at 2–3.

3   Streedharan filed an opposition on June 9, 2022. ECF No. 21 ("Opp'n"). Mac Tools filed its Reply

4   on June 16, 2022. ECF No. 22 ("Reply"). A hearing on the Motion was held on August 18, 2022.

5                                      **REQUEST FOR JUDICIAL NOTICE**

6        **I.       Applicable Law**

7        A court may take judicial notice of facts not subject to reasonable dispute where the facts "(1)

8   [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and

9   readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid.

10  201(b). Under this standard, courts may take judicial notice of "*undisputed* matters of public record,"

11  but generally may not take judicial notice of "*disputed* facts stated in public records." *Lee v. City of*

12  *Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of*

13  *Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). The Ninth Circuit has recognized public

14  records, including documents on file in federal or state court, as appropriate for judicial notice. *See,*

15  *e.g.*, *Harris v. County of Orange*, 682 F.3d 1126, 1132–33 (9th Cir. 2012); *United States v. Black*,

16  482 F.3d 1035, 1041 (9th Cir. 2007).

17       **II.      Discussion**

18       Streedharan requests this Court take judicial notice of an Order Granting Motion to Strike in a

19  case arising out of the Superior Court of California, County of Alameda. ECF No. 21-3. As this

20  Order was submitted in a state court proceeding, it is a matter of public record. The Court GRANTS

21  Streedharan's request as court records are appropriate for judicial notice.

22                                 **MOTION FOR JUDGMENT ON THE PLEADINGS**

23       **I.       Applicable Law**

24       Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are

25  closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.

26  R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, accepting all factual

27  allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party

28  is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir.

2012) (internal quotation marks omitted). A court must construe all factual allegations in the pleadings in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

A motion under Rule 12(c) is considered "functionally identical" to a motion under Rule 12(b)(6). *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011) (citing *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)). The key difference between these two motions is just the timing of the filing. *See Dworkin*, 867 F.2d at 1192. Accordingly, judgment on the pleadings should be entered when a complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is factually plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**II.   <u>Discussion</u>**

Mac Tools moves for judgment on the pleadings as to all of Streedharan's claims on the sole grounds that Streedharan failed to sufficiently allege that Mac Tools was his employer. Mot. at 2. For the reasons set forth below, the Court concludes that the Complaint sufficiently alleges an employment relationship.

**A.  Applicable Employment Tests Under California Law.**

The parties dispute what test applies to determine whether an employment relationship exists between Mac Tools and Distributors. *Compare* Mot. at 6–10 *with* Opp'n at 7–16.

Until 2018, courts in California generally applied the common law test set out in *S.G. Borello & Sons, Inc. v. Dep't of Industrial Relations* ("*Borello*"), 48 Cal.3d 341 (1989) to determine where an individual was an employee or an independent contractor. Under the common law, "[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *Id.* at 350 (quoting *Tieberg v. Unemployment Ins. App. Bd.*, 2 Cal.3d 943 (1970)) (alteration in original).

Then in 2018, the California Supreme Court established the three-factor ABC test to determine whether a worker should be classified as an employee or independent contractor for the

1   purposes of California wage orders.[3] *Dynamex Operations W. v. Superior Ct.*, ("*Dynamex*") 4

2   Cal.5th 903, 944–63 (2018). The California Supreme Court held that workers were *presumed* to be

3   employees *unless* the hiring entity could establish *all* of the following three factors: (A) that the

4   worker is free from the control and direction of the hiring entity in connection with the performance

5   of the work, both under the contract for the performance of the work and in fact; *and* (B) that the

6   worker performs work that is outside the usual course of the hiring entity's business; *and* (C) that the

7   worker is customarily engaged in an independently established trade, occupation, or business of the

8   same nature as the work performed (the "ABC test"). *Id.* at 957; *see id.* at 950 n. 20 ("This standard,

9   whose objective is to create a simpler, clearer test for determining whether the worker is an

10  employee or an independent contractor, *presumes a worker hired by an entity is an employee* and

11  *places the burden on the hirer* to establish that the worker is an independent contractor") (emphasis

12  added).

13       Shortly after the *Dynamex* decision, the California legislature codified the ABC test and

14  expanded it to apply, not only to wage orders, but more broadly to the Labor Code and

15  Unemployment Insurance Code. *See* Cal. Lab. Code §§ 2775 *et seq*. This extension of the ABC test

16  "was prospective, with an effective date of January 1, 2020." *Lawson v. Grubhub, Inc.*, 13 F.4th 908,

17  912 (9th Cir. 2021) (citing Cal. Lab. Code § 2785(c)).

18

19

---

20  [3] Wage orders are industry-specific rules promulgated by the Industrial Welfare Commission. "The Industrial

21  Welfare Commission (IWC) is the state agency empower to formulate wage orders governing employment in
    California. The Legislature defunded the IWC in 2004, however its wage orders remain in effect." *Murphy v.

22  Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094, 1102 n. 4 (citations omitted).  "*Martinez* [*v. Combs*, 49
    Cal.4th 35 (2010)] held that '[t]o employ . . . under the IWC's definition, has three alternative definitions. It

23  means: (a) to exercise control over the wages, hours, or working conditions, *or* (b) to suffer or permit to work,
    *or* (c) to engage, thereby creating a common law employment relationship.'" *Hill v. Walmart Inc.*, 32 F.4th

24  811, 819-20 (9th Cir. 2022). The California Supreme Court in *Dynamex* established the ABC test as the
    manner for determining whether the "suffer or permit to work" standard had been met. *Id.* "*Dynamex* was

25  clear that it 'address[ed] only' the issue of how to distinguish between employees and independent contractors
    'with regard to those claims that derive directly from the obligations imposed by [a] wage order.'" *Bowerman

26  v. Field Asset Servs., Inc.*, 39 F.4th 652, 664 (9th Cir. 2022) (citations omitted). "*Dynamex* further suggested
    that its holding should not extend beyond that context, by describing the ABC test as a 'distinct standard that

27  provides broader coverage of workers with regard to the very fundamental protections afforded by wage and
    hour laws and wage orders,' given 'the [Industrial Welfare Commission's] determination that it is appropriate

28  to apply a distinct and particularly expansive definition of employment regarding obligations imposed by a
    wage order.'" *Id.*

1     Here, Streedharan alleges that he began working for Mac Tools in 2019 and he seeks to
2     represent a class of Distributors for a period of four years prior to November 24, 2021. Compl. ¶¶ 7,
3     32. Streedharan also appears to assert both claims arising from California wage orders and claims
4     arising from the California Labor Code. As such, Labor Code section 2775 will not govern the
5     claims arising before January 2020—its effective date. This presents a question as to which test,
6     *Borello* or *Dynamex*, will govern Streedharan's claims. If Streedharan's claims arise from a wage
7     order, *Dynamex* will apply to determine whether he and other Distributors were Mac Tools's
8     employees or independent contractors.  If Streedharan's claims do not arise from a wage order, the
9     common law *Borello* test will apply to determine whether he and other Distributors were Mac
10    Tools's employees or independent contractors.  *See Bowerman*, 39 F.4th at 665 (concluding the
11    *Borello* test governed expense reimbursement claims not based on a California wage order). During
12    oral argument Streedharan's counsel clarified Streedharan's position that each of his alleged claims
13    are rooted in California Wage Order No. 1 and therefore the ABC test set out in *Dynamex* should
14    govern whether Streedharan is an employee of Mac Tools. In its Motion, Mac Tools addresses
15    neither *Dynamex* nor *Borello*; instead Mac Tools relies on other tests to support its position that there
16    was no employment relationship. Thus, the parties have not fully briefed the question regarding
17    whether the tests as set out in *Borello* or in *Dynamex* should govern Streedharan's claims.
18    Nevertheless, it is not necessary for the Court to determine at this stage which claims are governed
19    by *Dynamex* and which are governed by *Borello* because Streedharan has alleged a plausible
20    employment relationship under both tests.
21        However, because Mac Tools relies on other tests to support its position that there was no
22    employment relationship, before the Court addresses the application of *Dynamex* or *Borello* to the
23    allegations in the Complaint, the Court will first address these alternative arguments raised by Mac
24    Tools.
25
26
27
28

i.   Streedharan executed the franchise agreement on behalf of an LLC[4]

Mac Tools first contends that it did not enter into a Franchise Agreement with Streedharan, but rather it entered into an agreement with Streedharan's business—FLM Enterprises, LLC. Mot. at 6–7.  Therefore, Streedharan cannot be a "direct employee" of Mac Tools and to the extent Streedharan is an employee at all "he is only an employee of his own company, the actual franchisee." *Id.* at 7. However, under the Franchise Agreement "you" and "your" are defined as the persons who executed the agreement. The Franchise Agreement further provides that "[i]f the party signing . . .is a . . . limited liability company, . . . 'you' and 'your' shall refer to such entity and shall also refer to the natural person signing below on behalf of such entity[.]" Additionally, the Franchise Agreement states that

> YOUR APPOINTMENT AS A MAC TOOLS FRANCHISEE IS BASED ON MAC TOOLS' ASSESSMENT OF INDIVIDUAL(S) SIGNING THIS AGREEMENT, EVEN IF SIGNING ON BEHALF OF A CORPORATION OR OTHER LEGAL ENTITY, AND MAC TOOLS' UNDERSTANDING THAT SUCH INDIVIDUAL(S) WILL BE THE INDIVIDUAL(S) OVERSEEING OPERATION OF THE MAC TOOLS BUSINESS. MAC TOOLS WILL HAVE THE RIGHT TO TERMINATE THIS AGREEMENT IN THE EVENT SUCH INDIVIDUAL(S) CEASE TO OVERSEE OPERATION OF THE MAC TOOLS BUSINESS.

No. 14-2, pgs. 1, 35. As such, the agreement contemplates that an individual, like Streedharan, would be bound by its terms even if the individual executed the agreement on behalf of a business entity.

---

[4] "[J]udgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989); *see* Fed. R. Civ. P. 12(d). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (reviewing a Rule 12(b)(6) motion). Here, Streedharan references executing the Franchise Agreement in his Complaint. Compl. ¶¶ 18, n. 1, 24. Streedharan also does not dispute that the Franchise Agreement Defendant refers to in its Motion relates to the parties' relationship, the classification of which forms the basis of his claims. *See* Opp'n at 6 n. 6. Accordingly, the Court finds the Franchise Agreement is incorporated by reference into the Complaint.

Moreover, Mac Tools has not cited to any authority indicating that an individual cannot be deemed an employee because he executed an agreement with the putative employer on behalf of his business entity. A review of relevant caselaw indicates that the existence of a business entity is one factor that is considered, but it is not dispositive in determining whether an individual is an independent contractor rather than an employee.

In his Opposition, Streedharan relies on *Ruiz v. Affinity Logistics, Corp.*, 754 F.3d 1093 (9th Cir. 2014). Although *Ruiz* concerns a different procedural stage than the present litigation, the Court finds its reasoning persuasive. There, the Ninth Circuit reversed a district court's judgment finding that a group of truck drivers were independent contractors after a bench trial. *Id.* at 1096. The drivers were required to obtain "a fictious business name, a business license, and a commercial checking account" as part of an attempt to ensure the drivers became independent contractors. *Id.* The putative employer advised the drivers on how to complete the necessary forms, and "went as far as to complete the form for [plaintiff], leaving only the spaces for his signature blank." *Id.* The Ninth Circuit applied the common law test set out in *Borello*, to determine whether the drivers were employees or independent contractors. *Id.* at 1099. The fact that the drivers had formed their own business was only one factor balanced in the analysis, and the Ninth Circuit held that the district court "clearly erred by not giving enough weight to the fact that Affinity required drivers to create these businesses as a condition of employment." *Id.* at 1103–04. However, the Court went on to note "in the real world, these businesses were in name only. The drivers' only business was with Affinity because the drivers could not use their trucks for any purpose other than their work for Affinity." *Id.*

In *Bowerman*, the Ninth Circuit reversed a district court's grant of partial summary judgment for a class finding the class had been misclassified as independent contractors under the test set out in *Borello* and the putative employer was liable for unpaid overtime and business expenses. 39 F.4th at 657–58. There, the putative employer, FAS, was in the business of pre-foreclosure property preservation but did not itself perform the services for clients. Instead, it contracted with vendors to perform those services. *Id.* at 657. Some of these vendors were sole proprietors, and others were corporations. *Id.* Some vendors brought a class action asserting FAS misclassified them as independent contractors and sought unpaid overtime wages and reimbursement for business

1    expenses. *Id.* Several issues were raised on appeal, including whether *Borello* or *Dynamex* applied to

2    the claims. *Id.* at 661. After determining the plaintiffs' overtime claims were governed by *Dynamex*

3    and not *Borello*, the Ninth Circuit rejected FAS's argument that the overtime claims were "joint

4    employment" claims and that *Dynamex* did not extend to the joint employment context. *Id.* at 665.

5    The Ninth Circuit opined that the sole proprietors have no putative employer other than FAS

6    because, in part, the legal entity is not separate from the individual owner. *Id.* The Court instructed

7    that on remand, the district court "may consider the joint employment issue in the first instance for

8    class members who own or operate LLCs or corporations, which are distinct legal entities." *Id.* As

9    such, like *Ruiz*, the existence of a separate entity was not dispositive, but part of the overall inquiry

10   into whether there existed an employment relationship.

11       Also notable is the California Legislature's retroactive "business-to-business" exception to

12   *Dynamex*'s ABC test under California Labor Code section 2776. *See also* Cal. Lab. Code § 2785.

13   "Under that exception, 'the holding in *Dynamex* do[es] not apply to a bona fide business-to-business

14   contracting relationship . . . [i]f an individual acting as a sole proprietor, or a business entity formed

15   as a partnership, limited liability company, limited liability partnership, or corporation ('business

16   service provider') contracts to provide services to another such business.'" *Bowerman*, 39 F.4th at

17   671. "Instead, 'the determination of employee or independent contractor status of the business

18   services provider shall be governed by *Borello*, if the contracting business demonstrates that [each of

19   twelve] criteria [is] satisfied.'" *Id.*; *see* Cal. Lab. Code § 2776. In this legislative exception, the mere

20   existence of a business entity is not dispositive. Even where the requirements of the section are

21   satisfied, the common law *Borello* test still applies to determine whether an individual is an

22   employee or independent contractor.

23       In light of the above, whether Mac Tools entered into a Franchise Agreement with

24   Streedharan personally, or his business, is a fact to consider in determining whether there was an

25   employment relationship. It is not dispositive in demonstrating that there was not an employment

26   relationship. As the Complaint alleges, Mac Tools controls the list of customers Distributors can

27   service and "subject to very limited exceptions, Distributors may only carry Mac Tools's products."

28   Compl. ¶¶ 19–20.  Thus, Streedharan plausibly and sufficiently alleges at this stage that even if the

1   Distributors had established their own entities, their only business was to sell Mac Tools's products

2   to Mac Tools's customers.

3                          ii.   Mac Tools is not a joint employer or the "hiring entity"

4          Mac Tools also contends that Streedharan has not adequately alleged that it was an employer

5   under a joint employer theory. Mot. at 7. In response, Streedharan asserts that the joint employer

6   caselaw does not apply, but rather the *Dynamex* test applies. Opp'n at 15–16. Mac Tools responds

7   that the test set out in *Dynamex* does not apply because Mac Tools is not a "hiring entity" and did

8   not "hire" Streedharan. Reply at 1–2.

9          In *Mejia et al. v. Roussous Construction, Inc.*, 76 Cal. App. 5th 811 (2022), the California Court

10  of Appeals reversed a verdict for the putative employer where the trial court instructed the jury that

11  before the *Dynamex* ABC test applied, plaintiff must first establish that they were hired either by the

12  putative employer or the putative employer's agent. *Id.* at 814. The Court of Appeals held this

13  instruction was error and reversed for a new trial. *Id.* The Court of Appeals reasoned that the

14  *Dynamex* court did not intend to impose a threshold hiring entity requirement, the use of the phrase

15  "hiring entity" was meant to be a neutral term and imposing a hiring entity requirement would "run

16  counter to the intent of California wage and hour laws." *Id.* at 818–20; *see also People v. Uber*

17  *Technologies, Inc.*, 56 Cal.App.5th 266, 288 (2020) (rejecting hiring entity test). As such,

18  Streedharan need not establish that Mac Tools was a "hiring entity" in order to for the ABC test and

19  presumption set out in *Dynamex* to apply.

20         The Court of Appeals also rejected the putative employer's attempt to rely on joint employer

21  caselaw. *Mejia*, 76 Cal.App.5th at 820–822.  There the putative employer relied on two cases that

22  declined to apply *Dynamex* to joint employer liability claims. *Id.* at 820; *see Henderson v. Equilon*

23  *Enterprises, LLC*, 40 Cal.App.5th 1111 (2019); *Curry v. Equilon Enterprises, LLC*, 23 Cal.App.5th

24  289 (2018). The Court of Appeals held that these cases were inapposite because where plaintiffs

25  assert a joint employer relationship, different policy considerations are at issue than those which

26  *Dynamex* was aimed at addressing.

27         "*Dynamex* was concerned with the problem of business misclassifying workers as
       independent contractor[s]" to obtain economic advantages—concerns not present
28     with a joint employer claim, where "the worker is an admitted employee of a

primarily employer, and is subject to the protection of applicable labor laws and wage orders."

*Id.* at 820 (*quoting Henderson*, 40 Cal.App.5th at 1127–28). The Court of Appeals held that this case was not a joint employment case because "Plaintiffs are not admitted employees of a primarily employer: plaintiffs maintain they were solely Roussos employees, and the supervisors/subcontractors maintain plaintiffs were not their employees." *Id.* at 821. "And by all accounts, plaintiffs were not provided the protections due [to] employees." *Id.* As such, this was not the case were the *Dynamex* policy considerations were inapplicable but "[r]ather, this case [went] to the heart of the *Dynamex* question: were plaintiffs properly classified as independent contractors?" *Id.*

Here, the attempt by Mac Tools to rely on joint employer case law at this stage suffers the same defects. Mac Tools relies on the assumption that FLM Enterprises, LLC is Streedharan's primary admitted employer. But Streedharan maintains that Mac Tools misclassified Distributors like himself as independent contractors and that Distributors were not provided the protections due to employees. Compl. ¶¶ 2, 8. There is no admitted employer. Like the Court of Appeals held in *Mejia*, this case goes "to the heart of the *Dynamex* question": were Distributors properly classified as independent contractors? *See Mejia*, 76 Cal.App.5th at 821.

Accordingly, the Court will assess whether Streedharan has plausibly alleged an employment relationship under the tests set out in *Borello* and *Dynamex*.

### B. Under *Dynamex*, Streedharan Is Presumed to Be An Employee.

Under *Dynamex*, the burden is on the putative employer to demonstrate that the worker is an independent contractor, and the putative employer's inability to show any one of the factors means that the worker shall be considered an employee. *See Hill*, 32 F.4th at 819 ("[The ABC test] presumes the existence of an employer-employee relationship '[u]nless the hiring entity establishes' all three [factors]") (citing *Dynamex*, 4 Cal. 5th at 964).

To the extent that *Dynamex* applies to Streedharan's claims, on a motion for judgment on the pleadings Streedharan need only properly allege that he worked for the putative employer. *See Veasman v. Nuance Commc'ns, Inc.*, Case No. 21-cv-08423-MEMF (ASx), 2022 WL 2964411, at *6 (C.D. Cal. June 29, 2022) ("where a plaintiff has properly alleged that he worked for an entity—as

1    Veasman has—he need not do more to allege that he is not an independent contractor. That would

2    turn the presumption under California law on its head.")

3         Here, Streedharan has alleged that Distributors, like himself, contract directly with Mac

4    Tools and provide services that benefit Mac Tools. Compl. ¶¶ 18, n. 1, 24.  Specifically, Streedharan

5    alleges that he performed work for Mac Tools as a franchisee and that "Mac tools strictly controls

6    and regulates Distributors." *Id.* ¶ 17. Streedharan claims, among other things, that Mac Tools

7    requires Distributors to: "follow the terms of Mac Tools's onerous Agreement and Mac Tools'[s]

8    Confidential Field Operations Manual, along with other written instructions," "make weekly in-

9    person costumer calls to Mac Tools's list of customers at their worksite," "make customer

10   deliveries," "and maintain Mac Tools's inventory levels." *Id.* ¶ 17. Distributors must "maintain

11   minimum purchase requirements, provide post-purchase product support and maintenance, meet

12   Mac Tool[s's] collection requirements, and use Mac Tools's required computer programs . . . ." *Id.*

13   According to Streedharan, "being a Franchisee is a full-time job" and Mac Tools requires that

14   Distributors personally "work full-time to diligently promote, market, and increase the sale of" Mac

15   Tools products and Mac Tools's customer base. *Id.* ¶ 18. Mac Tools also reserves the right to "add or

16   modify" the list of customers or "stops" that a Distributor must service. *Id.* ¶ 19.

17        Streedharan goes even further by also alleging facts to indicate the non-existence of one of

18   the *Dynamex* factors, specifically that the work Distributors perform is not outside the usual course

19   of business for Mac Tools. As alleged "Mac Tools manufactures and distributes tools and related

20   products like tool boxes [sic] and service equipment" and "sells Products." *Id.* ¶ 14. Distributors are

21   not the only avenue in which Mac Tools sells its products; as alleged, "Mac Tools also sells and

22   distributes its products through non-mobile channels like ecommerce (i.e. online) and commercial

23   sales representatives (that Mac Tools recognizes as employees)." *Id.* ¶ 16. Thus, these facts

24   sufficiently allege the non-existence of Prong B—selling Mac Tools Products was not outside the

25   usual course of Mac Tools's business. Mac Tools attempts to dispute this by merely asserting that

26   Mac Tools "is in the business of manufacturing tools, selling franchises, and selling to franchisees."

27   Reply at 3. However, Streedharan's well-pleaded facts must be taken as true at this stage.

28

**C. Employment Relationship Under the *Borello* test.**

Under *Borello*, "[w]hile the right to control is the most important factor, it is not the only one." *Hill*, 32 F.4th at 818. "Rather, *Borello* instructs courts to consider the following 'secondary indicia' to determine 'the nature of a service relationship:'"

> (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

*Id.* (internal citations omitted).

To the extent that the *Borello* test applies to Streedharan's claims, he has sufficiently alleged an employment relationship at this stage as Complaint properly alleges that Mac Tools exuded control over the manner and means by which Distributors are to accomplish sales. Streedharan also alleges the existence of certain secondary indicia. For example, Streedharan alleges that "Mac Tools also sells and distributes its products through non-mobile channels like ecommerce (i.e. online) and commercial sales representatives (that Mac Tools recognizes as employees)" indicating neither are performing services in a distinct occupation or business. Streedharan alleges that Mac Tools monitors Distributor's performance and their work is overseen by District Managers, indicating this is not the type of work done by a specialist without supervision. *Id.* ¶ 26. Along these lines, Streedharan also alleges that Distributors must attend mandatory training before and after they are "hired." *Id.* ¶ 21.  As alleged, Mac Tools effectively controls where the work is performed by controlling "both the list of customers [that] Distributors must service and the customers that may be added to a Distributor's territory." *Id.* ¶ 19. Indeed, selling to customers that are not on Mac Tools's list of customers or within the Franchisee territory, is grounds to terminate Distributors. *Id.* ¶ 25. Streedharan also alleges facts to indicate that Mac Tools provides the instrumentalities to perform the work in that Distributors are required "to only sell Products to those on the Distributor's assigned list of stops" and "subject to very limited exceptions, Distributors may only carry Mac Tools'[s]

products." *Id.* ¶ 20. Additionally, Mac Tools "reserves the right to set the price for products sold to Distributors" and then "functionally sets the price of Products that end-purchasers pay based on Mac Tools online catalogues, flyers, and the Mac Tools website." *Id.* ¶ 20.

Counsel for Mac Tools asserted during oral argument that the facts in Streedharan's complaint merely illustrate a Franchise relationship. But that does not mean these facts do not illustrate an employment relationship under California law. Streedharan need only assert a plausible claim for relief at this stage, which he has done here by sufficiently alleging facts to indicate that even under the common law *Borello* test, Distributors were treated as employees of Mac Tools.

### D. Streedharan Has Standing.

Finally, Mac Tools contends that Streedharan lacks standing because he was not an employee. Mot. at 10. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Thus, this doctrine limits the group of litigants allowed to maintain a lawsuit in federal court to seek redress for a legal wrong. *See Valley Forge Christian Coll. v. Am. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472–73 (1982). Case law clearly establishes that the "irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). These elements are that the plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (citation omitted). "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Id.* at 1547 (internal quotation marks and citations omitted).

As established above, Streedharan has sufficiently alleged an employment relationship. According to Streedharan, Mac Tools misclassified him and other Distributors as independent contractors, while treating them as employees, precluding them from obtaining the benefits afforded to employees under California law. *See generally* Compl. As such, Streedharan's alleged injuries are directly traceable to Mac Tools's conduct and are likely to be redressed should he prevail.

For the foregoing reasons, the Court **DENIES** Mac Tools's Motion for Judgment on the Pleadings.

1

## MOTION TO COMPEL ARBITRATION

2

### I.    Applicable Law

3      Under Section 2 of the Federal Arbitration Act ("FAA"), arbitration clauses in contracts "shall be

4  valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

5  revocation of any contract." 9 U.S.C. § 2. The FAA reflects the "fundamental principle that

6  arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)

7  (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). "If an ordinary procedural

8  rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an

9  arbitration contract, then so be it. The federal policy is about treating arbitration contracts like all

10  others, not about fostering arbitration." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022). In

11  determining whether to compel arbitration, the court must consider two gateway factors: (1) whether

12  there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the

13  dispute. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *Howsam v. Dean*

14  *Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). Moreover, arbitration agreements may be invalidated

15  by "generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by

16  defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to

17  arbitrate is at issue." *Concepcion*, 563 U.S. at 343 (internal quotation marks omitted) (citing

18  *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). The Act "leaves no place for the

19  exercise of discretion by a district court, but instead mandates that district courts shall direct the

20  parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."

21  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

22

### II.    Discussion

23      Mac Tools seeks to compel the entire action to binding arbitration pursuant to the arbitration

24  provisions located in the Franchise Agreement. Mot. at 10-18. The Motion also seeks to stay or

25  dismiss the action pending arbitration under 9 U.S.C. § 3. Mot. at 18-19. Streedharan contends that

26  the Arbitration Agreement cannot be enforced because there was no mutual assent to arbitrate, Mac

27  Tools waived its right to arbitrate, the arbitration clause does not encompass his claims, and the

28  clause is unconscionable under California law. Opp'n at 7.

1

**A.  A Valid Arbitration Agreement Exists.**

2

i.   Mutual Assent

3

"In California, [g]eneral principles of contract law determine whether the parties have

4

entered a binding agreement to arbitrate." *Pinnacle Museum Tower Ass'n. v. Pinnacle Mkt. Dev.*

5

*(US), LLC*, 55 Cal.4th 223, 236 (2012) (internal quotations omitted).[5] The burden is on the party

6

seeking arbitration to prove the existence of an arbitration agreement by a preponderance of the

7

evidence. *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal.4th 394, 397 (1996). "An essential element

8

of any contract is the consent of the parties, or mutual assent." *Donovan v. RRL Corp.*, 26 Cal. 4th

9

261, 270 (2001), *as modified* (Sept. 12, 2001). And "[m]utual assent is determined under an

10

objective standard applied to the outward manifestations or expressions of the parties, *i.e.*, the

11

reasonable meaning of their words and acts, and not their unexpressed intentions or understandings."

12

*Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 173 (2015)*.*

13

Although Streedharan admits to signing the Franchise Agreement, Streedharan Decl. ¶ 3, , he

14

nonetheless disputes its validity. Streedharan contends that there was no meeting of the minds

15

because the Franchise Agreement addendum and an addendum to the FDD include disclaimer

16

language which undermines the enforceability of the Arbitration Agreement. Opp'n at 18-19.

17

Streedharan points to the following language in the addendum to the FDD:

18

19

**The Franchise Agreement requires you to participate in** non-binding mediation
and **binding arbitration** with New York, New York as the forum. **This provision**

20

**may not be enforceable under California Law.** The Franchise Agreement
requires that the courts of the state of Ohio or the United States District Court for

21

the Southern District of Ohio will have sole jurisdiction over enforceable of the
arbitration and/or enforceable of the Franchise Agreement. This provision may not

22

be enforceable under California law.

23

24

Streedharan Decl. ¶ 2, Ex. B (emphasis in original). At oral argument Streedharan's attorney asserted

25

that Streedharan's argument rested on the language in the FDD addendum. However, in his

26

27

[5] Despite the agreement calling for Ohio law to apply, the parties do not dispute that California law governs
the Court's interpretation of whether there is a valid arbitration agreement and whether it is enforceable. *See*

28

Mot. at 13; Opp'n at 16.

opposition Streedharan also points to the following language located in the addendum to the

Franchise Agreement, modifying section 19.2(d) which addresses "arbitration":

> **THIS AGREEMENT REQUIRES NEW YORK, NEW YORK AS THE FORUM FOR MEDIATION. THIS PROVISION MAY NOT BE ENFORCEABLE UNDER CALIFORNIA LAW.**
>
> **THIS AGREEMENT REQUIRES NEW YORK, NEW YORK AS THE FORUM FOR ARBITRATION. THIS PROVISION MAY NOT BE ENFORCEABLE UNDER CALIFORNIA LAW.**
>
> **THIS AGREEMENT REQUIRES OHIO AS THE FORUM FOR PERMITTED LITIGATION. THIS PROVISION MAY NOT BE ENFORCEABLE UNDER CALIFORNIA LAW.**

ECF No. 14-2; *see* Opp'n at 19.

Relying on *Winter v. Window Fashions Professionals, Inc.*, 166 Cal.App.4th 943 (2008), Streedharan contends that when the arbitration agreement disclaims enforceability there is no meeting of the minds. Opp'n at 18. In *Winter*, the California court of appeals affirmed a trial court's decision invalidating an arbitration agreement located in a franchise agreement. *Id.* at 950. The franchise agreement executed between the parties provided that binding arbitration would be conducted in Texas. *Id.* at 946. However, another document that was also provided to the franchisee—a Uniform Franchise Offering Circular ("UFOC")—had the following language:

> The franchise agreement requires binding arbitration. The arbitration will occur at Dallas County, Texas with the costs being borne by the losing party. This provision may not be enforceable under California law.
>
> The franchise agreement requires application of the laws of the forum of Texas. This provision may not be enforceable under California law.

*Id.* at 946, 950. After a dispute arose, the franchisee filed a complaint to rescind the franchise agreement and asserted other contract related claims. *Id.* The trial court, relying on *Laxmi Investments, LLC v. Golf USA*, 193 F.3d 1095 (9th Cir. 1999) denied the franchisors' petition to compel arbitration concluding there was no meeting of the minds and, even if there was, the clause

1  was unconscionable. *Winter*, 166 Cal.App.4th at 950. The California Court of Appeals affirmed

2  holding there was no meeting of the minds as the entire agreement to arbitrate. *Id.*

3      In *Laxmi*, the plaintiff franchisee purchased a franchise from the defendant franchisor, an

4  Oklahoma corporation, and opened the franchise in California. *Laxmi Investments, LLC*, 193 F.3d at

5  1096. The UFOC advised the franchisee that the franchise agreement's provision—which required

6  binding arbitration would take place outside California—might not be enforceable under California

7  law. *Id.* After a dispute arose, the franchisee requested that arbitration take place in California

8  despite the franchise agreement's terms calling for Oklahoma as the forum for arbitration. *Id.* The

9  district court held that arbitration must proceed in Oklahoma. *Id.* On appeal the Ninth Circuit

10  reversed and held that the parties never clearly agreed to a forum outside of California. *Id.* at 1097.

11  Accordingly, the Ninth Circuit invalidated only the forum selection provision and not the entire

12  arbitration agreement. *Id.* 1097. Thus, the holding in *Winter*—invalidating the entire arbitration

13  agreement because of the UFOC's disclaimer language—effectively expanded the holding in *Laxmi*,

14  which limited its holding to invalidating the forum selection provision only.

15      The Ninth Circuit had occasion to address *Winter*'s holding in *Nygaard v. Prop. Damage*

16  *Appraisers, Inc.*, 779 Fed. App'x 474, 476 (9th Cir. 2019), reh'g denied (Aug. 27, 2019). In

17  *Nygaard*, the Ninth Circuit affirmed a district court's denial of a motion to compel arbitration. *Id.* at

18  475. There, an addendum to a franchise agreement stated the following:

19

20      [1] The Agreement requires binding arbitration. [2] The arbitration will occur at the
        PDA's corporate headquarters in Fort Worth, Texas, before a sole arbitrator agreed
21      to by the parties and selected from the panel of arbitrators of the American
        Arbitration Association, with the costs being borne by the losing party. [3] This
22      provision may not be enforceable under California law. [4] Prospective franchisees
        are encouraged to consult private legal counsel to determine the applicability of
23      California and federal laws (such as Business and Professions Code Section
        20040.5, Code of Civil Procedure Section 1281, and the Federal Arbitration Act)
24      to any provisions of the Franchise Agreement restricting venue to a forum outside
        of the State of California.
25

26

27

28

20

1    *Nygaard v. Prop. Damage Appraisers, Inc.*, No. 16-CV-02184-VC, 2017 WL 8793228, at *2 (E.D.

2    Cal. Dec. 28, 2017), *aff'd*, 779 Fed. App'x 474 (9th Cir. 2019). Relying on *Winter*, the district court

3    invalidated the entire arbitration agreement, and the Ninth Circuit affirmed, reasoning:

4

5                [w]e are bound by the California Court of Appeal's decision in [*Winter*.] In a case
             containing the same language at issue here—a venue selection clause containing
6            the phrase "[t]his provision may not be enforceable under California law"—*Winter*
             invalidated an entire arbitration provision because there was no meeting of the
7            minds. No California court has issued a decision contrary to *Winter*. . . .We are not
             "convinced that the California Supreme Court would reject" *Winter*; therefore, we
8            are bound to follow it.

9    *Nygaard*, 79 App'x at 476 (internal citations omitted). The Ninth Circuit went on to state that the

10   language here was not merely included in the UFOC, but the addendum to the franchise agreement,

11   which "itself was signed and executed on the same date as the franchise agreement." The fact that

12   the parties "included the language voluntarily, rather than as required by law [made] the case to

13   follow *Winter* that much stronger." *Id.*

14        This case is distinguishable from *Winter* and *Nygaard*. First, unlike *Winter* which involved

15   the disclaimer language present in only the UFOC, here the addendum to the Franchise Agreement

16   and the addendum to the FDD includes disclaimer language. The disclaimer language in the

17   addendum to the FDD follows a sentence referring not to mediation or arbitration generally, but

18   specifically the forum for arbitration or mediation. Streedharan Decl. ¶ 2, Ex. B ("The Franchise

19   Agreement requires you to participate in non-binding mediation and binding arbitration with New

20   York, New York as the forum. This provision may not be enforceable under California Law.")

21   Second, the disclaimer language in the addendum to the Franchise Agreement, which is the

22   document that was executed, refers clearly to the forum selected for arbitration. It provided that

23   "**THIS AGREEMENT REQUIRES NEW YORK, NEW YORK AS THE FORUM FOR**

24   **ARBITRATION. THIS PROVISION MAY NOT BE ENFORCEABLE UNDER**

25   **CALIFORNIA LAW**." In *Nygaard*, the phrase "this provision" as stated in the addendum was

26

27

28

1   interpreted by the district court to apply to the entire arbitration agreement.[6] *Nygaard*, 2017 WL
2   8793228, at *2 ("The best reading of this paragraph is one in which '[t]his provision' refers to the
3   arbitration provision in its entirety, not merely one aspect of it"). In contrast, the best reading of the
4   phrase "[t]his provision" in both the addendum to the FDD and the addendum to the Franchise
5   Agreement is one in which it is refers to New York being the forum for arbitration. The Court does
6   not conclude that the disclaimer language should be read as invalidating the entire agreement to
7   arbitrate.

8                              ii.   Waiver

9        "Under federal law, waiver is 'the intentional relinquishment or abandonment of a known
10  right.'" *Morgan.*, 142 S. Ct. at 1713 (citations omitted). Recently, the Supreme Court held that
11  "prejudice is not a condition of finding that a party waived its right to . . .  compel arbitration under
12  the [Federal Arbitration Act]." *Id*. at 1714; *cf. Newirth by & through Newirth v. Aegis Senior
13  Communities, LLC*, 931 F.3d 935, 940 (9th Cir. 2019) (requiring the showing of prejudice).
14  Accordingly, to show waiver, a party need only show that the other party knew of its contractual
15  right to arbitration if it knew of the right and acted inconsistently with that right. *See Id*. at 1713-14.
16  "[A] party acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional
17  decision not to move to compel arbitration and (2) actively litigates the merits of a case for a
18  prolonged period of time in order to take advantage of being in court. *Newirth by & through
19  Newirth*, 931 F.3d at 941.

20       Streedharan contends that Mac Tools waived its right to arbitrate because it moved to compel
21  arbitration only if its motion for judgment on the pleadings was denied. Opp'n at 19. However, Mac
22  Tools moved for judgment on the pleadings, or alternatively, to compel arbitration in the same filing.
23  As such, Mac Tools did not wait a prolonged period of time to move to compel arbitration.
24  Moreover, Mac Tools also challenged Streedharan's standing under Article III of the Constitution,

25
26
27  ───────────────────
28  [6] The Ninth Circuit did not address the district court's interpretation of "this provision" in its memdispo.
    Accordingly, it is not clear that this was a basis for its decision to affirm the district court's ruling.

1    which is a threshold issue to litigating in federal court. *See Horne v. Flores*, 557 U.S. 433, 445

2    (2009). The Court is unconvinced that this operates as waiver.

3              **B.  The Arbitration Agreement Encompasses Streedharan's Claims.**

4              Streedharan also argues that the Arbitration Agreement does not cover his claims. Opp'n at

5    20-21. In doing so, he focuses only on the language "arising out of or relating to the agreement." *Id.*

6    However, the Court does not read the agreement so narrowly. The agreement calls for arbitration to

7    govern "any and all controversies, disputes or claims of any nature whatsoever arising out of or

8    related to this Agreement or any other agreement between you and Mac Tools, including the breach,

9    termination or validity of any such agreement, *or the relationship between you and Mac Tools* and/or

10   the operation of the Mac Tools Business and including any and all controversies, disputes or claims

11   of any nature against Mac Tools by anyone claiming through you." ECF No. 14-2 at 32 (emphasis

12   added). The language is broad enough to encompass all of Streedharan's claims, which arise out of

13   the alleged misclassification of Distributors (i.e. the relationship between him and Mac Tools).

14             **C.  The Arbitration Agreement is Unconscionable.**

15             Streedharan contends that the arbitration agreement is procedurally and substantively

16   unconscionable and therefore unenforceable. Opp'n at 21–25. Under California law, the party

17   resisting arbitration bears the burden of proving unconscionability. *Pinnacle Museum Tower Assn.*,

18   55 Cal.4th at 247. "[A] contract must be both procedurally and substantively unconscionable to be

19   rendered invalid." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) (citing

20   *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114 (2000)). Procedural

21   unconscionability "concerns the manner in which the contract was negotiated and the respective

22   circumstances of the parties at that time, focusing on the level of oppression and surprise involved in

23   the agreement." *Id.* (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 783 (9th Cir.

24   2002); *A&M Produce Co. v. FMC Corp.*, 186 Cal. Rptr. 114, 121–22 (1982)). On the other hand,

25   substantive unconscionability considers whether an agreement is "unjustifiably one-sided to such an

26   extent that it 'shocks the conscience.'" *Id.* at 923. To assess whether a provision is unconscionable,

27   courts employ a "sliding scale" approach, requiring less procedural unconscionability where the

28

1    terms are more substantively oppressive, and less substantive unconscionability where the terms are

2    more procedurally oppressive. *Armendariz*, 24 Cal. 4th at 114.

3                              i.   The Arbitration Agreement Has Some Procedural Unconscionability

4          Streedharan argues that the Arbitration Agreement is procedurally unconscionable because it

5    is a contract of adhesion: the agreement was presented to him on a take-it-or-leave-it basis, where he

6    had no opportunity to negotiate its terms and it was drafted by Mac Tools, who holds superior

7    bargaining power. Opp'n at 22. Streedharan argues that the following elements also support a

8    finding of procedural unconscionability: Mac Tools did not provide a copy of the rules governing

9    arbitration or explain to Streedharan how to obtain them; the arbitration rules may change; and the

10   arbitration clause appears on page 32 in a single-spaced 37-page document without any separate

11   signature or initial. *Id.* Mac Tools contends that there is no procedural unconscionability because

12   Streedharan acknowledged and represented to Mac Tools in writing that he had 14 days to review

13   and consult with counsel, the arbitration provision is in normal size type, and Streedharan was

14   educated and owned his own business. Reply at 7.

15         "Procedural unconscionability exists when the stronger party drafts the contract and presents

16   it to the weaker party on a 'take-it-or-leave-it' basis." *Serafin v. Balco Properties Ltd., LLC*, 235 Cal.

17   App. 4th 165, 179 (2015). However, courts have consistently held that the fact that the arbitration

18   agreement is an adhesion contract does not render it automatically unenforceable as unconscionable.

19   *See, e.g.*, *Sanchez v. Carmax Auto Superstores California, LLC*, 224 Cal. App. 4th 398, 402 (2014)

20   ("[T]hat the agreement is required does not make it unenforceable, absent other factors."); *Lagatree*

21   *v. Luce, Forward, Hamilton & Scripp*s, 74 Cal. App. 4th 1105, 1127 (1999) ("[T]he cases uniformly

22   agree that a compulsory predispute arbitration agreement is not rendered unenforceable just because

23   it is required as a condition of employment or offered on a 'take it or leave it' basis.").

24         Here, Streedharan declares that the agreement was presented to him on a take-it-or-leave it

25   basis. Streedharan Decl. ¶ 5. As alleged Mac Tools is a subsidiary to a public traded company that

26   operates as "the worldwide leader in tools and storage." Compl. ¶ 10. In contrast, Streedharan

27   declares that he has an Associate's degree in automotive technology. Streedharan Decl. ¶ 9. He

28   further asserts that he established FLM Enterprises, LLC for the sole function of performing work

for Mac Tools. *Id.* ¶ 8. Otherwise, Streedharan asserts he has worked as an hourly employee for Lowes and now the Department of Motor Vehicles. *Id.* ¶ 10. Streedharan further asserts that he did not have the opportunity to negotiate the terms of the agreement and did not have an attorney review the agreement, nor did he consult an attorney before signing. *Id.* ¶ 5. Mac Tools did not offer any competing declarations addressing how the agreement was presented to Streedharan. As such, Streedharan has established that the arbitration agreement within the Franchise Agreement has some degree of procedural unconscionability because it is a contract of adhesion.

ii.   The Arbitration Agreement is Substantively Unconscionable

Streedharan contends that the arbitration agreement has a high degree of substantive unconscionability because: there exists a one-way statute of limitations clause; the arbitration agreement limits damages that can be recovered; the arbitration agreement imposes costs on Streedharan not permitted in court; the JAMS rules referenced limit discovery; and the Ohio choice-of-law clause "attempts to strip away unwaivable rights" and the New York forum selection clause "impose[s] significant hardships on the weaker party[.]" Opp'n at 23-25.

"An arbitration provision is substantively unconscionable if it is 'overly harsh' or generates 'one-sided' results." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281-82 (9th Cir. 2006) (analyzing arbitration provision in franchise agreement) (citations omitted). "California law requires an arbitration agreement have a 'modicum of bilaterality,' and arbitration provisions that are 'unfairly one-sided' are substantively unconscionable." *Id.* at 1282 (citing to *Armendariz,* 24 Cal.4th at 117, and *Little v. Auto Stiegler, Inc.,* 29 Cal.4th 1064, 1071 (2003)).

*1.   One-way statute of limitations*

Section 19.2 (f) of the Arbitration provisions states:

**(f) Claims Must Be Brought in One Year.** Except with respect to the enforcement of the parties' rights and remedies under (i) any promissory note executed by you in Mac Tools' favor and/or under any security agreement between the parties, or (ii) any promissory note executed by you in favor of a third party and/or under any security agreement between you and a third party, as to which the limitation provided by this Section 19.2(f) shall not apply, any and all claims, controversies and other disputes arising out of or relating to the Agreement, the relationship between you and Mac Tools or your operation of the Mac Tools Business, brought by any party hereto against the other, shall be commenced within

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

one (1) year from the occurrence of the facts giving rise to such claims or disputes, or such claim or dispute shall be barred.

ECF No. 14-2, pg. 33. The Court agrees that this provision is unconscionable. Many of Streedharan's claims arising from the California labor code have longer statute of limitations. *See De Leon v. Pinnacle Property Management Services, LLC*, 72 Cal.App.5th 476, 486-87 (2021) (collecting cases). Additionally, it is unfairly one-sided in that Mac Tools is free to sue Streedharan at any time for money damages arising from any security agreements between them.[7]

### 2. Fee-shifting

The arbitration agreement does not include cost provisions. However, the agreement provides that "the controversy shall be settled by arbitration by a sole arbitrator in accordance with the then-effective JAMS Comprehensive Arbitration Rules and Procedures." ECF No. 14-2, pg. 33. Streedharan submitted to the Court the JAMS' Comprehensive Arbitration Rules & Procedures. ECF No. 21-2, Declaration of Shaun Markley ("Markley Decl.") ¶ 3, Ex. D. Under Rule 31 "[e]ach Party shall pay its pro rata share of JAMS fees and expenses set forth in the JAMS fee schedule in effect at the time of commencement of the Arbitration, unless the Parties agree on a different allocation of fees and expenses." *Id.* Parties are also "jointly and severally liable for the payment of JAMS arbitration fees and Arbitrator compensation and expenses." *Id.* This impermissibly imposes the "type of expense that [Streedharan] would not be required to bear if he [] were free to bring the action in court." *Armendariz*, 24 Cal.4th at 110-11.

In response, Mac Tools contends that "JAMS fee schedule limits any fees born by Plaintiff to $400" and that it "must bear all other costs[.]" Reply at 8. In support of this contention, Mac Tools submits a sworn declaration and emails with JAMS related to fees and employment disputes. ECF No. 22-1, Declaration of Mitchell A. Tobias ("Tobias Decl."), ¶ 4–5, Exs. 1-2. Mac Tools contends that a JAMS case manager explained to it, in a prior action involving similar claims as presented here, that JAMS determines whether their Employment Arbitration Minimum Standards of

---

[7] Indeed, Mac Tools concedes that this term is not enforceable. *See* Reply at 8. It requests this term should be severed and contends that it does not affect the enforceability of the entire Arbitration Agreement. *Id.*

Procedural Fairness ("JAMS Employment Standards")[8] apply based on a review of the demand for Arbitration. *Id.* ¶ 4, Ex. 1. In this prior action, JAMS determined the Employment Standards applied. Thus, according to Mac Tools, the determination that the Employment Standards applied in this prior action indicates that "any disagreement with JAMS' determination of whether an arbitration involves an employment-related dispute is irrelevant[.]" *Id.* ¶ 5. The Court is not convinced.

In *Lim,* the Ninth Circuit affirmed a district court's finding that a delegation clause was unconscionable, in part because the agreement required plaintiff to pay half the arbitration fees, "including with respect to the gateway issue of arbitrability[.]" 8 F.4th at 1003. Even though the AAA Commercial Arbitration Rules permitted the arbitrator to excuse plaintiff from paying the arbitration fees upon showing of substantial hardship, the district court reasoned that "[t]here was no assurance that such relief would be granted." *Id.* Thus, the Ninth Circuit affirmed holding "the district court correctly concluded the cost-shifting provision, as applied to the delegation clause, was unconscionable." *Id.* Similarly, here, there is no assurances that JAMS Employment Standards would apply in this case merely because JAMS determined those rules applied to a prior case involving similar claims. *See* Tobias Decl. ¶ 5. The agreement calls for JAMS' Comprehensive Arbitration Rules & Procedures. Moreover, "after-the-fact" willingness to bear the costs of arbitration, "[to change a provision of an arbitration agreement so it conforms to law] does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy." *O'Hare v. Mun. Res. Consultants*, 107 Cal. App. 4th 267, 280 (2003) (citations omitted).

### 3.   *Limit on remedies*

The agreement seeks to limit the parties' recovery to "actual damages." In section 19.2 (d) "Arbitration" it provides in part that the "arbitrator is <u>not</u> empowered to and <u>shall not</u>, award punitive, exemplary, indirect, special, consequential or incidental damages or any other damages in excess of actual direct damages or in excess of any limit on direct damages set forth in this

---

[8] According to Mac Tools, under the JAMS Employment standards, "the only fee that an employee may be required to pay is the initial JAMS Case Management Fee" of $400. Tobias Decl., ¶¶ 4, 7.

1   Agreement, which is lower." ECF No. 14-2, at pg. 33. Further, section 20 of the Franchise

2   Agreement provides the following "Waiver of Damages" language:

3

4       **20.1 <u>Waiver.</u>** You and Mac Tools hereby waive to the fullest extent permitted by
        law any right to or claim of any punitive, exemplary, indirect, special, consequential

5       or incidental damages against the other.

6       **20.2 <u>Limitation to Actual Damages.</u>** You and Mac Tools agree that, in the event
        of a dispute or claim with or against the other, each party shall be limited to the

7       recovery of any actual direct damages sustained by it, subject to any limit on direct
        damages set forth in this Agreement.

8

9       **20.3 <u>No Attempt to Collect.</u>** Neither you nor Mac Tools will accept or attempt to
        collect through the courts or otherwise any punitive, exemplary, indirect,

10      consequential or incidental damages from the other even if such damages are
        entered, ordered or awarded by the arbitrator despite the agreement between you

11      and Mac Tools to the contrary.

12  ECF No. 14-2, at pg. 34.

13          "A damages limitation may be unconscionable if it contravenes public policy by limiting

14  remedies available in the statute under which a plaintiff proceeds, or if it is one-sided." *Chin v.*

15  *Advanced Fresh Concepts Franchise Corp.*, 194 Cal. App. 4th 704, 712 (2011) (reversing denial of

16  franchisor's motion to compel arbitration) (citing *Armendariz*, 24 Cal.4th at 103-04). The provisions

17  above suggest a degree of substantive unconscionability because they would limit Streedharan's

18  ability to recover remedies, such as statutory penalties available under the California Labor Code.

19  *See Subcontracting Concepts (CT), LLC v. De Melo*, 34 Cal.App.5th 201, 213 (2019) (finding

20  arbitration clause that limited arbitrator's authority to award "actual monetary damages only" was

21  substantively unconscionable.)

22          Mac Tools asserts that because the waiver in section 20.1 includes the language "to the

23  fullest extent permitted by law" that the arbitration provisions do not limit damages available relying

24  on *Castillo v. CleanNet USA, Inc.*, 358 F.Supp.3d 912 (N.D. Cal. 2018). Reply at 8. There the

25  district court found that a punitive damages waiver in a franchise agreement's arbitration provision

26  was capable of two interpretations because of the language "to the fullest extent permitted by law."

27

28

1    *Castillo*, 358 F.Supp.3d at 946. Applying the doctrine of contra proferentem[9]—construing the

2    ambiguity in favor of the non-drafting party—the court concluded that the arbitration agreement did

3    not deprive the plaintiff of his statutory remedies which could not be waived under California law.

4    *Id.*

5         However, Mac Tools's narrow reading of one section, ignores the clear language in the

6    remainder of the agreement that aims to limit remedies. ECF No. 14-2, at pg. 33–34 (the arbitrator

7    "is <u>not</u> empowered to and <u>shall not</u>, award punitive, exemplary, indirect, special, consequential or

8    incidental damages or any other damages in excess of actual direct damages"); ("Neither you nor

9    Mac Tools will accept or attempt to collect through the courts or otherwise any punitive, exemplary,

10   indirect, consequential or incidental damages from the other even if such damages are entered");

11   ("You and Mac Tools agree that, in the event of a dispute or claim with or against the other, each

12   party shall be limited to the recovery of any actual direct damages sustained by it"). Thus—even

13   assuming section 20.1 can be interpreted to mean Streedharan did not waive his remedies under the

14   California Labor Code—under the agreement as drafted, the arbitrator is not empowered to award

15   such remedies and Mac Tools and Streedharan agrees not to accept or attempt to collect such

16   remedies.

17              *4.   Choice-of-law and forum selection clauses*

18        Streedharan contends the forum selection clause and the choice-of-law clause are

19   unconscionable. Opp'n at 24-25. Mac Tools asserts that these clauses are "inapplicable" because it

20   concedes that California substantive law will apply and "a mutually agreeable forum will need to be

21   selected." Reply at 9.

22

23   _____

24   [9] In 2019, the Supreme Court held in *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019) that "[t]he doctrine
     of *contra proferentem* cannot substitute for the requisite affirmative "contractual basis for concluding that the

25   part[ies] *agreed* to [class arbitration]." *Id.* at 1419 (citations omitted). As such, the "ambiguities about the
     scope of arbitration must be resolved in favor of arbitration." *Id.* at 1418; *see also W. Bagel Co., Inc. v.*

26   *Superior Ct. of Los Angeles Cnty.*, 66 Cal. App. 5th 649, 668 (2021) (holding trial court erred in applying
     contra proferentem to determine where parties agreed to binding or non-binding arbitration).

27

28

1   In *Lim*, the party seeking to compel arbitration argued that it would waive certain provisions

2   at issue "by paying all the admirative costs of arbitration, not enforcing the venue clause, and

3   arbitrating the claims in Southern California." 8 F.4th at 1004. However, the Ninth Circuit held that

4   a district court "correctly recognized that waiving unconscionable elements of a delegation clause

5   does not change the analysis of whether the delegation clause, as drafted, is unconscionable." *Id.* "To

6   conclude otherwise would incentivize drafters to overreach based on the assumption they could

7   simply waive unconscionable terms when faced with litigation." *Id.* Accordingly, Defendant's

8   concessions or offers to waive the choice-of-law or forum selection provisions do not necessarily

9   mean that, as drafted, the agreement is not unconscionable. *See Armendariz*, 24 Cal.4th at 125

10  ("whether an employer is willing, now that the employment relationship has ended, to allow the

11  arbitration provision to be mutually applicable, or to encompass the full range of remedies, does not

12  change the fact that the agreement as written is unconscionable and contrary to public policy.")

13  As already addressed above, the choice-of-law and forum selection clauses are invalid for

14  lack of meeting of the minds due to the disclaimer language providing "**THIS PROVISION MAY**

15  **NOT BE ENFORCEABLE UNDER CALIFORNIA LAW**." ECF No. 14-2.  Streedharan had no

16  reason to believe that Mac Tools would enforce these clauses. *Winters*, 166 Cal.App.4th at 950,

17  *Laxmi*, 193 F.3d at 1097; *see also Nagrampa*, 469 F.3d at 1292 ("The misleading language of the

18  offering circular, as well as MailCoups's institution of proceedings in California, lead us to conclude

19  that [franchisee] had no reasonable expectation that arbitration would take place in Boston.").

20  Moreover, the clause designating New York as the forum for arbitration is otherwise

21  unconscionable. "Our court of appeals has found that designating a forum 'so prohibitively costly to

22  [a plaintiff] that [he would be] precluded from participating in the proceeding,' such as designating

23  Boston, while the plaintiff lives in California, is unenforceable, particularly in light of procedural

24  unconscionability." *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 421 (N.D. Cal. 2015) (citing

25  *Nagrampa*, 469 F.3d at 1289); *see also Lim*, 8 F.4th at 1002 (affirming district court's finding that

26  Texas venue provision, viewed alongside cost-splitting, and fee-shifting, in delegation clause was

27  "prohibitively costly" and substantively unconscionable).

28

Here, Streedharan is a resident of California. Compl. ¶ 7. Streedharan declares that he lost $50,000 while working with Mac Tools and has limited resources. Streedharan Decl. ¶ 10. He further asserts that given his current earnings and general financial resources it would be a significant hardship to litigate claims against Mac Tools in New York "given the expense of travel and being away from home over the course of the trial or other case-related proceedings." *Id.* ¶ 11. Designating New York has the forum to arbitrate disputes benefits Mac Tools, a Delaware limited liability company whose principal place of business is in Ohio, Compl. ¶ 8, and would be prohibitively costly for Streedharan. *See Nagrampa*, 469 F.3d at 1292 (holding forum selection clause was substantively unconscionable because it was "part of a contract of adhesion, it was not entered into freely and voluntarily"; franchisee was "provided inadequate notice in the offering circular because the circular contained misleading language creating the reasonable expectation that it would not be enforced" and "considering the respective circumstances of the parties, the 'place and manner' requirements are unduly oppressive and harsh upon [franchisee] who had no bargaining power.").

### iii.   Severability

Mac Tools argues to the extent the Court finds any provision of the Arbitration Agreement unconscionable, it should sever the unconscionable portions. Reply at 9. Streedharan asserts that the Arbitration Agreement is permeated with unconscionability and should not be enforced. Opp'n at 25.

"A trial court has the discretion to refuse to enforce an agreement as a whole if it is permeated by the unconscionability." *Carmona v. Lincoln Millennium Car Wash, Inc.*, 226 Cal. App. 4th 74, 90 (2014). The California Supreme Court has indicated that "multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." *Armendariz*, 24 Cal.4th at 124. "An arbitration agreement permeated by unconscionability, or one that contains unconscionable aspects that cannot be cured by severance, restriction, or duly authorized reformation, should not be enforced." *Id.* In determining whether the entire agreement is tainted by the unconscionable provisions, courts consider two factors: (1) whether "the agreement contains more than one objectionable term" and (2) whether "there is no single provision a court can strike or restrict in

order to remove the unconscionable taint from the agreement." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1273 (9th Cir. 2017).

Here there are multiple unconscionable provisions—the one-way statute of limitations, the forum selection provision, the incorporation of JAMS rules regarding fee sharing, and the limit on available remedies. Mac Tools asserts that JAMS will apply its Employment Standards despite the arbitration provisions language calling for "the then-effective JAMS Comprehensive Arbitration Rules and Procedures." ECF No. 14-2, pg. 33. Counsel for Mac Tools also asserted during oral argument that Mac Tools will simply not enforce the remaining objectionable provisions. In essence, what Mac Tools would have this Court do is not just sever one objectionable provision but several and rewrite the provision currently calling for JAMS Comprehensive Arbitration Rules and Procedures altogether—a task this Court is not empowered to do.

Moreover, the existence of these multiple defects "indicate a systemic effort to impose arbitration" as an inferior forum that works to Mac Tools's advantage. *Armendariz*, 24 Cal.4th at 124. To remove the unconscionable taint, several provisions would need to be severed, not simply one provision. As such the agreement is permeated with unconscionability and should not be enforced. *See Lim*, 8 F.4th at 1006 ("given the pervasive unconscionability of the delegation clause based on multiple unconscionable provisions—the cost-splitting, fee-shifting, and Texas venue provisions—the district court did not abuse its discretion by not severing those unconscionable terms"); *Davis v. Kozak*, 53 Cal. App. 5th 897, 918 (2020) (affirming trial court's decision to not enforce arbitration agreement that suffered multiple defects that worked to employer's advantage); *Carmona*, 226 Cal. App. 4th at 90 (affirming trial court's decision not to enforce arbitration agreement that suffered from multiple defects demonstrating a systemic lack of mutuality that favored the employers.)

For the foregoing reasons, the Court **DENIES** Mac Tools's motion in the alternative to compel arbitration.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For the reasons stated above, the Court **DENIES** Mac Tools's Motion for Judgment on the Pleadings, or Alternatively to Compel Arbitration in its entirety.

**IT IS SO ORDERED**.

Dated: September 27, 2022

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge